UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO: 1:19-cv-00050-MOC

| | |
|---|---|
| JOSHUA STEVEN MERRILL, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11). Having considered the motions, the Court enters the following Order.

## I. ADMINISTRATIVE HISTORY

On December 5, 2014, Plaintiff Joshua Merrill filed applications for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act (the "Act").[1] In both applications, Plaintiff alleged he became disabled beginning April 1, 2009. (Tr. 16). Plaintiff's claims were denied initially and upon reconsideration, so he filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (Id.). On August 21, 2017, ALJ Alice Jordan held a hearing for de novo consideration of Plaintiff's claims. (Id.). Thereafter, on February 14, 2018, the ALJ issued a decision concluding Plaintiff was not disabled within the meaning of the Act. (Tr. 16–32). The Appeals Council denied Plaintiff's request for

---

[1] Plaintiff later filed a claim for child's insurance benefits, alleging he was disabled at birth. The ALJ found Plaintiff was not disabled before the attainment of age 22. (Tr. 19–20). Plaintiff references this finding but does not challenge it. As such, he has waived any argument therewith. See Amavisca v. Berryhill, No. 5:18-CV-26, 2018 WL 5722663, at *6 (W.D.N.C. Nov. 1, 2018).

1

review on December 17, 2018, rendering the ALJ's decision a final decision reviewable by this Court. (Tr. 1). Plaintiff exhausted all available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

It appears that the ALJ's factual findings are supported by substantial evidence. As such, this Court adopts and incorporates those findings herein as fully set forth. The findings are referenced in the substantive discussion that follows.

## III. STANDARD OF REVIEW

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put

simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (recognizing courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

## IV. DISCUSSION

The Court has reviewed the ALJ's decision and the administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidence, but whether the ALJ's decision is supported by substantial evidence. For reasons explained herein, the Court finds that it is.

### A. SEQUENTIAL EVALUATION

The Act provides that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant

3

is disabled within the meaning of the Act:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b. An individual who does not have a "severe impairment" will not be found to be disabled;

   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

   d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

   e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### B. THE ADMINISTRATIVE DECISION

The issue before the ALJ was whether Plaintiff was disabled from April 1, 2009, the alleged disability onset date, to the date of his decision. Using the sequential review process, the ALJ determined at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, at step one, the ALJ recognized that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 19). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: osteoarthritis, spinal disorder, organic mental disorders, and trichorhinophalangeal syndrome. (Id.). She also determined that Plaintiff suffered from several non-severe impairments, including: a learning disorder, hypertension, high

4

cholesterol, osteoporosis and osteopenia due to chromosomal abnormalities, right shoulder pain, and hearing loss. (Tr. 20). Next, at step three, the ALJ decided Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 21–22).

The ALJ then found Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567 and 416.967, and that he could: lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally; sit, stand, or walk for six hours each, for a total of eight hours; never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance; occasionally stoop; frequently crouch, kneel, and crawl; occasionally reach overhead with both extremities; and frequently perform tasks involving fine manipulation and gross manipulation. (Tr. 24). The ALJ also found that Plaintiff should avoid concentrated exposure to hazards. (Id.). Finally, the ALJ limited Plaintiff to: simple, routine, repetitive tasks; maintaining concentration, persistence, and pace for two-hour periods; minimal interaction with the general public; and avoiding high-volume and fast-paced production work jobs. (Id.).

Based on these findings, the ALJ concluded at step four that Plaintiff was unable to perform past relevant work. (Tr. 30). Still, at step five, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, including: garment sorter, cloth folder, and nut sorter. (Tr. 31–32). Because these jobs existed, the ALJ held that Plaintiff was not disabled within the meaning of the Act. (Tr. 32).

## C. DISCUSSION

Plaintiff principally contends the ALJ erred when assessing his ability to perform other existing work in the national economy. Specifically, Plaintiff asserts the ALJ errantly posed

hypothetical questions to a vocational expert that failed to account for his intellectual limitations.[2] The Court disagrees. As explained below, substantial evidence supported the ALJ's finding that Plaintiff only suffered from a non-severe learning disorder. And because that limitation was non-severe, the ALJ did not have to include it in her hypothetical questions to the vocational expert.

Vocational experts "assist the ALJ in determining whether there is work available in the national economy which [a] claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Id. Thus, in Mascio v. Colvin, the Fourth Circuit held that a hypothetical question was "legally insufficient" where it "failed to account for [the claimant's] . . . mental limitations." 780 F.3d 632, 637–38 (4th Cir. 2015).

Although a hypothetical question "posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." Russell v. Barnhart, 58 F. App'x 25, 30 (4th Cir. 2003); see Walker, 889 F.2d at 50; Hailey v. Comm'r of Soc. Sec., 284 F. App'x 100, 104 (4th Cir. 2008). Additionally, the ALJ "may omit non-severe impairments" when posing hypotheticals to the vocational expert. Russell,

---

[2] Plaintiff vaguely and summarily contends that the "ALJ fail[ed] to identify with precision to the vocational witness the specific impairments of the Plaintiff," without explaining which additional limitations should have been accounted for. (Doc. No. 10, p. 19). Plaintiff primarily discusses the ALJ's failure to account for an intellectual assessment conducted by clinical psychologists, so the Court construes Plaintiff's challenge as a failure to account for his intellectual limitations. To the extent Plaintiff intended to challenge other, unspecified limitations, such conclusory allegations amount to a waiver. See Amavisca, 2018 WL 5722663, at *6; accord Martin v. Colvin, No. 1:14-CV-234, 2015 WL 9094738, at *4 (W.D.N.C. Dec. 16, 2015) (finding a vocational expert opinion afforded substantial evidence where a claimant failed to "articulate what, if any, additional limitations would be required that were not already accounted for"). Likewise, to the extent Plaintiff opaquely alludes to other purported errors in discussing the record, the Court deems those errors waived. See Amavisca, 2018 WL 5722663, at *6.

58 F. App'x at 30 (citing Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir.1983)); see Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 565 (6th Cir. 2014); Middlekauff v. Colvin, No. 15-CV-1399, 2016 WL 2924177, at *6 (D. Md. May 19, 2016).

Plaintiff argues the ALJ's hypotheticals were insufficient because they failed to account for limitations observed by "examining and testing clinical psychologists and . . . confirmed by the testimony of [his] mother." (Doc. No. 10, p. 18–19). In March 2015, Lisa Berger, M.A., acting under the supervision of Kelly Burgin, Ph.D., conducted an intellectual and academic assessment of Plaintiff. (Tr. 27). Afterward, she opined that Plaintiff was "limited in his ability to remember or understand simple or complex directions." (Tr. 529). Similarly, Plaintiff's mother testified that "[t]wo-step instructions were always difficult for [Plaintiff]" and "often he would have to be reminded" when employers instructed him to complete two tasks. (Tr. 65).

The ALJ identified these opinions but discounted them, finding instead that Plaintiff suffered from a non-severe learning disorder. (Tr. 20). According to the ALJ, she discounted those opinions because they were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (Tr. 26). In particular, the ALJ relied upon record testimony that was inconsistent with these alleged limitations. At the hearing, Plaintiff testified that he helps with household chores and sometimes cooks. (Tr. 47–49). Plaintiff's mother testified that he assists with housecleaning, cooking, caring for pets, and shopping. (Tr. 281–88). She also testified that he attends to his personal grooming and hygiene, watches television, and plays video games. (Id.). Because these activities "require concentration," the ALJ reasoned that Plaintiff's ability to perform them "refutes the conclusion that he would be unable or have significant problems completing simple tasks." (Tr. 29–30).

The ALJ also highlighted additional evidence that belied Plaintiff's purported limitations.

7

First, contrary to Berger's opinion, another medical assessment concluded Plaintiff was neurologically "normal." (Tr. 29, Tr. 619). Also, Plaintiff worked "for a number of years prior to the alleged onset date," stopping only for an arm injury. (Tr. 128). Plaintiff presented no evidence that his mental capacity to work had "diminished" since the injury. (Tr. 29).

In sum, the ALJ identified the record evidence supporting Plaintiff's alleged intellectual limitations while also "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" that supported her contrary conclusion. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Mascio, 780 F.3d at 636). This explanation properly demonstrated how the ALJ evaluated the evidence and therefore built the requisite "logical bridge from that evidence to [her] conclusion." Id. (citation and alterations omitted). Accordingly, the ALJ's finding is supported by substantial evidence. See id.

After discounting inconsistent testimony, the ALJ found that Plaintiff suffered from a non-severe learning disorder. (Tr. 20). As explained, the ALJ may omit non-severe impairments when posing hypothetical questions to a vocational expert. See Russell, 58 F. App'x at 30. As such, the ALJ did not err in failing to present thus non-severe limitations to the expert.

### D. CONCLUSION

The undersigned has carefully reviewed the administrative record, the ALJ's decision, and the parties' briefs. Review of the entire record reveals that the ALJ's findings are supported by substantial evidence. See Richardson, 402 U.S. at 390; Hays v. Sullivan, 907 F.2d 143, 1456 (4th Cir. 1990). Because there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment shall be denied, the Commissioner's Motion for Summary Judgment will be granted, and the ALJ's decision will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the ALJ, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: October 8, 2019

Max O. Cogburn Jr
United States District Judge